# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY.

## JANUARY TERM 1905.

Case 1.—ACTION BY JOHN C. MANION AGAINST PETER MANION FOR MONEY ADVANCED.—March 1.

### Manion v. Manion.

Appeal from Henderson Circuit Court.

J. L. DORSEY, Circuit Judge.

Judgment for defendant. Plaintiff appeals. Affirmed.

Complicated Accounts—Transfer to Equity—Constitution—Trial by Jury—Pleading and Proof—Variance—Party Misled—Incomplete Transcript—Omission Supplied—Cost.

1. Complicated Accounts—Settlement—Transfer to Equity—In an action between parties embracing about 500 items in the petition, the most of which are controverted and a counterclaim filed involving the settlement of mutual complicated accounts of great detail, it was proper for the court, on motion of defendant, to transfer the case to the equity docket and refer it to the commissioner for settlement.

2. Constitution—Trial by Jury—Section 7 of the Constitution, providing "that the ancient mode of trial by jury is to be held sacred and the right thereof to remain inviolate," was not intended to be so strictly construed as to prevent the due and proper administration of justice in cases of complicated accounts when the remedy at law was deemed inadequate, so that a jury could not arrive with accuracy upon the condition of the account between the parties.

3. Pleading and Proof—Variance—Party Misled—In the settlement of complicated accounts a variance between the pleading and proof of certain items is not material where the form

of the plea is not objected to unless the party complaining was misled thereby to his prejudice.

4. Incomplete Transcript—Omission Supplied—Cost—Where, in an equitable action, appellant ordered only a partial transcript of the record, the appellee not knowing what grounds of reversal would be relied on, had the right to have the entire record copied, and should not be taxed with the cost of the additional record.

WARD & WARD and MONTGOMERY MERRITT for appellant.

1. Upon the petition, answer and reply the motion to transfer was made; no affidavits were filed in support of the motion; no oral proof was heard. The court passed on the motion from the information gathered from the pleadings.

The court will observe that the demand is purely legal, nor does the answer contain a single equitable defense. In the 1st and 2d paragraphs he picks out about 96 items from the 600 sued on, and says: "These I did not get; the rest is admitted, but these the plaintiff must prove." Here is a legal issue—matter for the jury—not an accountant or chancellor. The items are well defined, exactly set out, no investigation is necessary; one says: "I paid this money out for you." The other says: "You did not do that." Purely a question of fact, to be passed on by the jury.

2. The third paragraph denies that plaintiff worked for defendant six months at $100 per month, and says that he worked only five months, and under an express contract that defendant was to fix the wage, and it was not worth over $25 per month.

The issue presented is, was the service performed under an express contract that defendant was to fix the wage; if not, then what was the service worth? A jury is the proper tribunal to settle this question. The chancellor has no right to pass on this question over defendant's objections.

3. The fourth paragraph sets out that plaintiff had in his employ Annie Wright and Joe Clayton, and paid them $199.55 out of defendant's money, and that plaintiff justly owed him that sum, and he asked judgment for it.

Here the issue is, who did these people work for? There is no question as to the amount paid them. If they worked for the plaintiff, he should refund the $199.55; if they worked for the defendant, the payment was proper. Where does the equitable question come into this issue? It is purely legal.

The fifth paragraph alleges that defendant furnished plaintiff with about $2,000 worth of feed; that plaintiff neglected his business and allowed great quantities of the feed to be wasted, to defendant's damage in the sum of $500.

Here the claim sounds in damages; no contract, but negli-

Manion v. Manion.

gence. Was plaintiff guilty of negligently wasting defendant's feed? A jury should have been allowed to pass on the question. The chancellor had no right to assume this jurisdiction over plaintiff's objection.

5. The sixth paragraph alleges that plaintiff had sold $125 worth of whisky out there; that he paid no license, and he should not recover from defendant that sum.

Plaintiff says he did not sell any whisky. Surely the chancellor has no jurisdiction here. Did he sell the whisky? It is for the jury to say.

6. The seventh paragraph is an omnibus plea of payment—a kind of "quantum meruit" plea of payment, and "quantum meruit" is always for the jury.

Nowhere is there any suggestion of complicated accounts between the parties. And if such was the case, the complicated accounts are not an issue here. The issues in this suit are clear cut. The plaintiff files a bill of particulars; the defendant takes it up, accepts it, sifts it, and says: "About 94 of the items in your bill are bad." No intimation that a jury could not hear proof and pass on them. If a jury could not pass on this question here, where there is a bill of particulars of 94 items, one could not pass on any suit brought on a grocer's account, a butcher's account, or a dry goods merchant's account.

7. There is in this record no single fact tending to justify the transfer to equity, in the first place; or the refusal to re-transfer, in the second place.

CASES CITED.

Code, section 10; O'Connor v. Henderson Bridge Co., 95 Ky., 441; Breckinridge v. Brook, 1 A. K. M., 335; Bruce v. Burdett, 1 J. J. M., 80; Power v. Rieder, 9 Dana, 6; Pomeroy's Equity Juris., section 1412; Batchellor, &c. v. Planter's National Bank of Louisville, 78 Ky., 441; Meek v. McCall, 80 Ky., 374; Code, section 131.

YEAMAN & YEAMAN for appellee.

1. This appeal appears to be prosecuted, not because the judgment is not a just settlement of the rights of the parties, and a fair adjustment of the accounts between them, but because the court below erred, as appellant alleges, in transferring the case to equity and referring it to the commissioner to report upon the accounts in dispute.

2. Some. stress is laid by appellant upon the fact that when the motion to transfer was made the defendant (appellee) did not file an affidavit as the basis of the motion. The language of the provision in question is: "The court may, in its discretion, on motion of either party, or without motion, order the transfer of an action from the ordinary to the equity docket, &c."

3. When the order of transfer was made in this case the court below had before it the pleadings, including the plaintiff's account of over 600 disputed items and covering many pages, and it also had the 10 or 15 account books crudely kept by plaintiff; it looked into these matters, saw the complication of accounts, the great detail of facts, and that it would be impracticable for a jury to intelligently try the case, and, so seeing, transferred the case on motion of defendant, just as it would have been entirely justified in doing witnout any motion from either side.

4. If the court will look into the carefully prepared report of the commissioner, covering 60 pages, and upon which he was engaged 30 days, and then look into the books copied into this transcript, it will appear, not only that the trial court did not abuse its discretion in transferring the case to the equity docket and referring it to the commissioner, but that it would have abused its discretion had it refused to do so.

5. We submit that this court will not reverse upon the ground that the court below abused its discretion in transferring the case.

A careful reading of the record will show that the court did right. No jury, however intelligent, could have threaded through the tangled mazes of 10 or 15 badly kept books, disputed accounts, and contradictory testimony, and reached any result otherwise than by mere guess.

### CASES CITED.

O'Connor v. Henderson Bridge Co., 95 Ky., 641; City of Covington v. Limerick, 19 Ky. Law Rep., 330; Civil Code, section 10, sub-section 4.

OPINION BY CHIEF JUSTICE HOBSON—Affirming.

Appellant, John C. Manion, began this action in the Henderson Circuit Court by a petition in ordinary, in which he alleged that the defendant was indebted to him in the sum of $927.07 for balance of money advanced, paid and furnished to and for him, and for his use and benefit, at his special instance and request, and for labor and services performed for him at his like request, particulars of which were set out in an itemized account filed with the petition, and it was alleged that each item of the account was just and reasonable. The itemized account which was filed with the petition covers 17 pages of the transcript,

and embraces something like 500 items. The defendant filed an answer, in which he denied that he bought of the plaintiff, or that the plaintiff furnished to or for him at his instance or request, any of the goods, wares or merchandise charged on the account sued on, except as therein stated; and he denied that he ever had of the plaintiff, or that the plaintiff ever furnished to or for him, or that the defendant ever in any way got the benefit of, any of 94 items of the account which were set out in the answer. Among other things, the plaintiff claimed services for six months at $100 a month. The defendant denied that the plaintiff rendered services for more than five months, and alleged that his services were rendered under an agreement that he was to pay therefor what the services were worth, and that they were not worth over $25 a month. The defendant also alleged that the plaintiff had, while in his employ, put on the defendant's pay roll, and paid out of the defendant's money, two persons who were not in the defendant's service, amounting to $199.55. He also alleged that the plaintiff was employed to keep timebooks, and to take care of the feed which the defendant provided for his teams, which was placed in plaintiff's keeping, and that he wasted the feed to the amount of $500. He also alleged that the plaintiff sold whisky to his employes without license, and that the whisky so sold was charged to him on the account. Finally, he alleged that he had paid the plaintiff, and more than paid him, for all the goods, wares, merchandise or cash he ever had of the plaintiff or that the plaintiff ever used for him, and for all the services he ever rendered him. The plaintiff by reply controverted the affirmative allegations of the answer. The defendant entered a motion to transfer the case to the equity docket and refer it to the master commissioner

to audit the accounts between the parties. The plaintiff objected to the motion, but the court being of opinion that a transfer was necessary because of the peculiar questions involved, and because the case involved accounts so complicated and such great detail of facts as to render it impracticable for a jury to intelligently try the case, the motion was sustained, and the plaintiff excepted. The commissioner to whom the case was referred reported in favor of the defendant. Numerous exceptions were filed to his report, but the court overruled the exception and entered judgment in favor of the defendant. The plaintiff appeals, insisting that the court erred in denying him a jury trial.

In O'Connor & McCulloch v. Henderson Bridge Company, 95 Ky., 633, 16 Ky. Law Rep., 244, 27 S. W., 251, 983, this court held that as the ancient mode of trial by jury is, by section 7 of the Constitution, to be held sacred and the right thereof remain inviolate, subject to such modifications as may be authorized by the Constitution, section 10 of the Civil Code of Practice, which provides for the transfer of an action from the ordinary to the equity docket because of the peculiar questions involved, or because it involves accounts so complicated or such great detail of facts as to render it impracticable for a jury to intelligently try the case, adds nothing to the authority of the court to try an action in equity. But it was held in that case that section 7 of the Constitution was not intended to be so strictly construed as to prevent in any case the due and proper administration of justice; that courts of equity have for a long time necessarily had jurisdiction in all cases of mutual accounts, upon the ground of the inadequacy of the remedy at law; that in a complicated account a court of law would be incompetent to examine it before a

jury with the necessary accuracy; and that courts of equity constantly act by taking cognizance of matters which, though cognizable at law, are so involved with complex accounts that they can not properly be tried at law. In that case it was also said as follows: "This court has uniformly held that a court of equity has concurrent jurisdiction on matters of account, and 'should be exercised when otherwise there may be serious doubt as to the true state of the accounts, or difficulty in satisfactorily adjusting them and safely striking a balance.'" In City of Covington v. Limerick, 40 S. W., 254, 19 Ky. Law Rep., 330; Sallee's Administrator v. Eades, 50 S. W., 1102, 21 Ky. Law Rep., 109, and Brashears v. Letcher County Court, 61 S. W., 285, 22 Ky. Law Rep., 1763, the rule announced in the case cited was followed, and the transfer of the action from the ordinary to the equity docket was upheld. In the case before us there were mutual accounts or claims. It was incumbent on the plaintiff, as agent of the defendant, to render to him an account of his stewardship, and of such settlements courts of equity have always had jurisdiction. In none of the cases cited was there a greater complication of accounts than in the case before us. In none of them was it more evident that it was impracticable for a jury to intelligently try the case. For a jury to have attempted to pass on the disputed items of the account between the parties would have been, not to arrive with any accuracy at the condition of the account, but to have made a rough guess at it. We, therefore, conclude that the court properly transferred the action to the equity docket, and referred it to his commissioner to make a settlement of the accounts.

The defendant, moreover, testified that certain items of the account were paid by the plaintiff out of money

which he had furnished him for that purpose. It is insisted that this proof is incompetent, as there was no plea to this effect. The answer of the defendant denied that the plaintiff furnished him these items, or any part of them. He also pleaded affirmatively that he had paid the plaintiff all the money which he furnished for him. We can not see how, under these allegations, the form of which was not objected to, the plaintiff could have been misled. Both the parties took a large amount of proof, and it in fact appears from the record that they went into the case on its merits, and that the plaintiff was not in fact misled, but took proof on all the questions involved. It is provided in the Code that the variance shall not be material unless the party complaining was misled thereby to his prejudice. We fail to see that there was any variance here, and, clearly, it does not appear that the plaintiff was misled to his prejudice.

The plaintiff ordered for the appeal a partial transcript of the record, and the defendant then ordered the clerk to copy the remainder of it so as to make a complete transcript. The appellant has entered a motion that the cost of this additional record shall not be taxed. But either party was entitled to have a complete transcript of the record for the appeal. Appellant was not compelled to file an assignment of errors, and, therefore, the appellee, not knowing what ground of reversal might be relied on, had the right to have the entire record copied so as to take no chances. The motion that appellee shall be taxed with the cost of the additional record is overruled.

On the merits of the case, we see no reason for disturbing the chancellor's judgment confirming the report of the commissioner.

Judgment affirmed.