## Milliken's Executrix v. Enterprise Machine & Garage Company.

(Decided December 9, 1924.)

### Appeal from Simpson Circuit Court.

1. Corporations—Contracts Made by Foreign Corporation Between Change of Residence of Designated Agent and Designation of Another, Valid.—Contracts made by foreign corporation, between

death or change of residence of agent designated under Ky. Stats., section 571, and filing of statement designating another, are valid and enforceable, though agent moved from state.

2. Equity—Jurisdiction of Equity and Law Courts Concurrent.—Courts of equity exercise concurrent jurisdiction with courts of law in matters of account.

3. Account—Equitable Accounting Proper, Though Accounts are Not Mutual, if Numerous, Complicated, Difficult, and Long Continued.—While mutuality of accounts adds to difficulty of accounting, and may give equity for such purpose, when bill would not otherwise have it, equitable accounting is proper, if accounts, though wholly on one side, are numerous, complicated and difficult, extend over considerable period of time, and involve many transactions, especially in view of Civil Code of Practice, section 10, subdivision 4.

4. Trial—Action on Account of Several Hundred Items Held Properly Transferred to Equity Docket.—Action on account, consisting of several hundred items, listed on 35 account sheets, held properly transferred to equity docket under Civil Code of Practice, section 10, subdivision 4.

5. Witnesses—Former Stockholder Held Competent to Testify as to Entries Made by Him on Company's Books, in Action Against Debtor's Executrix.—Bookkeeper, owning no stock in company at time of transactions testified to, and disposing of stock subsequently acquired before testifying, held competent under Civil Code of Practice, section 606, subdivision 6, to testify as to entries made by him on books in suit against deceased debtor's executrix.

6. Witnesses—Partner Held Competent to Testify Against Executrix of Copartner Sued on Account for Supplies Purchased by Witness.—Buyer, whose testimony tended to show that he was partner in business, for which supplies were purchased on copartner's credit, held competent witness against latter's executrix in suit on account; his testimony not absolving him from liability to plaintiff.

RODES & HARLIN and MOORE & MOORE and JOHN S. MILLIKEN for appellant.

LAWRENCE B. FINN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Enterprise Machine and Garage Company brought this suit against J. J. Milliken's executrix to recover on an account amounting to $1,524.80. The petition proceeds on the theory that the purchases, which were actually made by one James West, were all made on the credit of Milliken, who agreed to pay for same. The case was transferred to equity and the chancellor ren-

dered judgment in favor of plaintiff. The executrix has appealed.

The first contention is that plaintiff, a corporation, was not entitled to recover because it had not complied with section 571, Kentucky Statutes, requiring the filing with the secretary of state of a statement giving the name of an agent upon whom process could be served, and that the court erred in sustaining a demurrer to the paragraph of the answer pleading that defense. The allegation is that on December 14, 1909, plaintiff filed with the secretary of state a statement designating H. H. Mullinex as its agent upon whom process could be served; that no other designation had been made since that time, and that on the — day of —, 1917, Mullinex moved from Franklin, Kentucky, to the state of Texas, and since that time had been a non-resident of the state of Kentucky, and absent therefrom. The precise question was before the court in House v. Bank of Lewisport, 178 Ky. 281, 198 S. W. 760. In holding that contracts made between the death or change of residence of a designated agent and the filing of a statement designating another are not unlawful, and unenforceable, the court said:

"Laying aside for the moment the third general provision, providing a punishment for failure to comply with the statute, it will be observed that the statute imposes two requirements: (1) That the corporation must file the statement before it can lawfully begin business; and (2) that any change in the agent of the corporation for the service of process shall be shown by filing a new statement. But this last provision does not make it unlawful for the corporation to do business pending the filing of the new statement; on the contrary, it expressly saves the case from the consequence of an omission to file the new statement by providing that the former agent shall remain agent for the service of process until the new statement is filed. . . .

"It was clearly the purpose of the statute to preserve both the agency and the business of the corporation during an interim between agencies, which must frequently occur. Can it be said that when the designated agent of a bank dies it must close its doors until it can appoint a new agent? or that in case the agent of a railroad company dies or removes from the county of his residence the com-

pany should stop its trains and cease doing all business until it can call a meeting of its directors, appoint a new agent, and certify that fact to the secretary of state? Clearly not. But if appellant's contention be sound these results must follow. It entirely overlooks the distinction, clearly made by the statute, between business done by a corporation before any statement whatever has been filed and business done by a going concern after the death, resignation or removal of its designated agent and before the appointment of another. The first character of business is prohibited, and contracts made in such business are void. In the other case, the breach of the statute is satisfied with a fine, which will have the desired effect of securing the appointment of a new agent.''

But it is suggested that the facts are different in that in the above case the agent remained in the state, while in this case, the agent moved from the state. But the opinion, *supra,* proceeds on the theory that the statute did not make it unlawful for the corporation to do business pending the filing of a new statement, and, that being true, the difference in facts is not such as to require the application of a different rule.

Another contention is that the defendant was entitled to a jury trial, and the court erred in transferring the case to equity. It must not be overlooked that matters of account form a class of cases wherein courts of equity have always exercised concurrent jurisdiction with courts of law. Breckenridge v. Brooks, 2 A. K. Marsh. 335, 12 Am. Dec. 401; O'Connor v. Henderson Bridge Company, 95 Ky. 633, 27 S. W. 251. While mutuality of the accounts adds to the difficulty of accounting, and may give equity for this purpose when the bill would not have equity but for the mutuality, mutuality is not indispensable to equity jurisdiction for accounting. If the accounts be wholly on one side, but are numerous, complicated and difficult, and extend over a considerable period of time, and involve many transactions, an accounting in equity is proper. Terrell v. Southern R. Co., 164 Ala. 423, 51 So. 254, 20 Ann. Cas. 901, 10 R. C. L. 355. Not only so, but the code authorizes the transfer of an action from the ordinary to the equity docket whenever the court before which the action is pending shall be of the opinion that such transfer is necessary

because the case involves accounts so complicated, or of such great detail of facts as to render it impracticable for a jury to intelligently try the case. Civil Code, section 10, subsection 4. Here, the account consisted of several hundred items which were listed on thirty-five account sheets filed as an exhibit with the petition, thus involving such great detail of facts as to render it impracticable for a jury to intelligently decide the case. It follows that the court did not err in transferring the case to equity.

Another insistence is that the greater portion of the evidence should have been excluded, and that the evidence properly admissible was insufficient to sustain the judgment. The first complaint is of the evidence of one Martin, who was the bookkeeper for the company, and it is insisted that Martin's evidence should have been excluded because he had been a stockholder in the company, although he had disposed of the stock before he testified. As the case is one where he did not own the stock when the transactions occurred, and disposed of the stock before he testified, it is doubtful whether his ownership of the stock in the interim would afford ground for rejecting his testimony. However this may be, it must not be overlooked that Martin testified to entries made by him on the books of the company and appearing in the accounts sued on, and that he was therefore a competent witness under subsection 6, section 606, Civil Code, which provides that a person may testify for himself as to the correctness of original entries made by him in an accounting according to the usual course of business though the person against whom they were made may have died. It results that Martin was a competent witness.

The further point is made that James West, who made the purchase, was not a competent witness. The basis of this contention is that West's evidence tended to absolve him from liability, and he therefore testified for himself. As a matter of fact, his testimony tended to show that he and Milliken were partners in the business for which the supplies were purchased from plaintiff. Therefore, the effect of his testimony was not to absolve him from liability, but to render him liable to plaintiff. That being true, it cannot be said that he was testifying for himself concerning transactions with a person then dead. It follows that he was a competent

witness, and that the court did not err in refusing to exclude his evidence.

As Martin and West were competent witnesses and their testimony was supplemented by other testimony of a persuasive character, we conclude that the evidence as a whole was sufficient to sustain the finding of the chancellor.

Judgment affirmed.